UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

Case No. 18-cr-60345-BB

UNITED STATES OF AMERICA,

    Plaintiff,

v.

DOMINEKE MILLER,

    Defendant.
_____/

### ORDER

**THIS CAUSE** is before the Court upon Defendant Domineke Miller's Motion Pursuant to Rules 36 and 60(b) or to Issue a [Order] Sua Sponte and Request for Compassionate Release and CARES ACT 2020 as well as Appointment of Counsel, ECF No. [32] ("Initial Motion"), and Emergency Motion for Compassionate Release and Appointment of Counsel Pursuant to 18 U.S.C. 3582(c)(1)(A), ECF No. [33] ("Emergency Motion") (collectively, "Motions"). The Court has considered the Motions, all supporting submissions, the record in this case, the applicable law, and is otherwise fully advised. For the reasons set forth below, the Motions are denied.

    **I.**    **BACKGROUND**

On May 10, 2019, Defendant was sentenced to 30 months' imprisonment followed by three years' supervised release following his convictions for possession of fifteen or more unauthorized access devices in violation of 18 U.S.C. § 1029(a)(3) and aggravated identity theft in violation of 18 U.S.C. § 1028A(a)(1). ECF No. [31]. His sentence, 6 months' imprisonment for Count I and 24 months' imprisonment for Count II, is to be served consecutively. Defendant is twenty-eight years old and is currently housed at FCI Butner Medium II.

In the Initial Motion, Defendant requests the Court (i) order the BOP to have his time spent in state custody be credited to his federal sentence or that his federal sentence be made concurrent with his state sentence; (ii) grant him compassionate release in light of the current coronavirus ("COVID-19") pandemic; (iii) grant him release to home confinement under the CARES Act, Pub. L. No. 116-136, 134 Stat. 281 (2020); and (iv) appoint counsel. ECF No. [32]. In the Emergency Motion, Plaintiff seeks compassionate release due to his alleged health conditions, including "VKH, a major debilitating eye disease" that has caused loss of vision, chronic high blood pressure, obesity, and a history of asthma. ECF No. [33]. He adds that even though the BOP knows he needs immediate eye surgery, he has not received it, and thus, the BOP has exhibited deliberate indifference to his constitutional rights. *Id.* If released, Defendant plans to reside with Vichelle Porter in Lauderhill, Florida. *Id. See also* ECF No. [40] (letter from Ms. Porter consenting to Defendant residing with her and their child). The Government opposes Defendant's requests, arguing that it "cannot in good conscience support [Defendant's] release from prison in light of his extensive history of domestic violence, and other violent crimes." ECF No. [39] at 1.

SARS-CoV-2, the novel coronavirus, and COVID-19, the disease it causes, have spread throughout the world and are impacting every person's life. The United States is currently reporting more confirmed cases of COVID-19 and deaths as a result than any other country, with more than 15,040,175 confirmed cases and over 285,351 reported deaths as of December 9, 2020.[1] The COVID-19 pandemic poses a serious danger to society at large, and especially to at-risk inmates. In addition, COVID-19 poses a higher risk to incarcerated individuals who are unable to practice health precautions available to the general public, such as social distancing.

---

[1] *Cases of Coronavirus Disease (COVID-19) in the U.S.*, Centers for Disease Control and Prevention, https://www.cdc.gov/coronavirus/2019-ncov/cases-updates/cases-in-us.html (last updated December 9, 2020).

As a result of this dynamic, unpredictable, and unprecedented situation, Attorney General William Barr has urged the Bureau of Prisons ("BOP") to move vulnerable inmates out of institutions and to home confinement, where appropriate. *See* Mem. from Attorney Gen. William Barr for Dir. of Bureau of Prisons re: Increasing Use of Home Confinement at Institutions Most Affected by COVID-19 (Apr. 3, 2020), https://www.justice.gov/file/1266661/download ("Memorandum"). The Memorandum identifies several facilities that have been particularly affected and which should be given priority in the BOP's consideration of implementing home confinement, including FCI Oakdale, FCI Danbury, and FCI Elkton. *Id.* at 1. In addition, the Attorney General has made an express finding that extant emergency conditions are materially affecting the functioning of the BOP, and directs that the BOP immediately maximize appropriate transfers to home confinement of all appropriate inmates at the specifically named facilities, and other similarly situated facilities where COVID-19 is materially affecting operations. *Id.* The Memorandum further directs the BOP to review all inmates who have COVID-19 risk factors as established by the Centers for Disease Control and Prevention ("CDC") to determine suitability for home confinement, while emphasizing the importance of protecting the public from individuals who may pose a danger to society, and recognizing the need to prevent over-burdening law enforcement with "the indiscriminate release of thousands of prisoners onto the streets without any verification that those prisoners will follow the laws when they are released . . . and that they will not return to their old ways as soon as they walk through the prison gates." *Id.* at 2-3. The Memorandum also stresses the need for careful individualized determinations regarding the propriety of releasing any given inmate and does not encourage indiscriminate release. *Id.* at 3.

Case No. 18-cr-60345-BB

## II.     DISCUSSION

"Generally, a court 'may not modify a term of imprisonment once it has been imposed.'" *United States v. Pubien*, No. 19-12078, 2020 WL 897402, at *2 (11th Cir. Feb. 25, 2020) (quoting 18 U.S.C. § 3582(c)).

> "The authority of a district court to modify an imprisonment sentence is narrowly limited by statute." [*United States v. Phillips*, 597 F.3d 1190, 1194-95 (11th Cir. 2010)]. Section 3582(c) of Title 18 provides that the district court may not modify a defendant's imprisonment sentence except: (1) if the Bureau of Prisons files a motion and extraordinary or compelling circumstances warrant modification or if the defendant is at least 70 years old and has served 30 years in prison; (2) if the modification is expressly permitted by statute or Federal Rule of Criminal Procedure 35; or (3) if the defendant's original sentencing range has subsequently been lowered as a result of an amendment to the Guidelines by the Sentencing Commission. 18 U.S.C. § 3582(c).

*United States v. Shaw*, 711 F. App'x 552, 554-55 (11th Cir. 2017); *see also United States v. Celedon*, 353 F. App'x 278, 280 (11th Cir. 2009); *United States v. Diaz-Clark*, 292 F.3d 1310, 1316-18 (11th Cir. 2002). Thus, "[t]he law is clear that the district court has no inherent authority to modify a sentence; it may do so only when authorized by a statute or rule." *United States v. Rivas*, No. 19-11691, 2020 WL 398708, at *4 (11th Cir. Jan. 23, 2020) (quoting *United States v. Puentes*, 803 F.3d 597, 605-06 (11th Cir. 2015)); *see also United States v. Llewlyn*, 879 F.3d 1291, 1296-97 (11th Cir. 2018) (quoting *Dillon v. United States*, 560 U.S. 817, 827 (2010)).

### A.     Home confinement

In the Initial Motion, Defendant requests that he be released to home confinement pursuant to the CARES Act. ECF No. [32] at 2. Upon review, the Court lacks authority to grant this relief. Once a sentence is imposed, the BOP designates the prisoner's place of imprisonment. *See* 18 U.S.C. § 3621(b). Section 3624(c)(2), Title 18 United States Code, addresses the BOP's home confinement authority:

> Home confinement authority.—The authority under this subsection may be used to place a prisoner in home confinement for the shorter of 10 percent of the term of imprisonment of that prisoner or 6 months. The Bureau of Prisons shall, to the extent practicable, place prisoners with lower risk levels and lower needs on home confinement for the maximum amount of time permitted under this paragraph.

18 U.S.C. § 3624(c)(2).

> Moreover, the CARES Act expanded the BOP's authority under § 3624(c)(2):

> During the covered emergency period, if the Attorney General finds that emergency conditions will materially affect the functioning of the Bureau, the Director of the Bureau may lengthen the maximum amount of time for which the Director is authorized to place a prisoner in home confinement under the first sentence of section 3624(c)(2) of title 18, United States Code, as the Director determines appropriate.

CARES Act § 12003(b)(2). "The Attorney General made those findings on April 3, 2020, conferring on the BOP the authority to expand its use of house confinement." *United States v. Phillips*, No. 6:16-CR-198-Orl-28GJK, 2020 WL 2219855, at *1 (M.D. Fla. May 7, 2020) (footnote omitted).

Based on the clear statutory language of 18 U.S.C. § 3624(c)(2) and § 12003(b)(2) of the CARES Act, this Court has no authority to grant Defendant's request for placement in home confinement. Rather, § 3624(c)(2) grants the BOP the exclusive authority to determine an inmate's place of confinement. "The CARES Act did not remove the exclusive authority of the BOP to designate the place of an inmate's confinement. 'The Attorney General — and by delegation the BOP — has exclusive authority and *discretion* to designate the place of an inmate's confinement.'" *Phillips*, 2020 WL 2219855, at *1 (quoting *Burg v. Nicklin*, No. EP-19-CV-24-FM, 2019 WL 369153, at *3 (W.D. Tex. Jan. 29, 2019)); *see also United States v. Daniels*, No. 4:08-CR-0464-SLB, 2020 WL 1938973, at *1 (N.D. Ala. Apr. 22, 2020) ("The BOP designates the place of defendant's imprisonment. The Court does not have authority to dictate placements to the BOP. While the CARES Act gives the BOP broad discretion to ***expand*** the use of home

confinement during the COVID-19 pandemic, the Court lacks jurisdiction to order home detention under this provision.") (citing 18 U.S.C. § 3621(b); *United States v. Cosby*, 180 F. App'x 13, 13 (10th Cir. 2006); *United States v. Engleson*, No. 13-CR-340-3(RJS), 2020 WL 1821797, at *1 (S.D.N.Y. Apr. 10, 2020) (while the court can make a recommendation, the BOP retains the ultimate decision of whether to release an inmate to home confinement)) (quoting *United States v. Read-Forbes*, No. CR 12-20099-01-KHV, 2020 WL 1888856, *5 (D. Kan. Apr. 16, 2020))).

> It is important to understand that a request for home confinement under the CARES Act is different than a reduction-in-sentence (RIS) request based upon compassionate release. The BOP is utilizing its authority under 18 U.S.C. [§ 3624(c)(2)] . . . — not the compassionate release provision of 18 U.S.C. § 3582(c) — to effectuate the Attorney General's directive to the BOP regarding home confinement in connection with the CARES Act. [This statute does] not authorize a federal court to order the BOP to release a prisoner. *See United States v. Calderon*, No. 19-11445, 2020 WL 883084, at *1 (11th Cir. Feb. 24, 2020) (explaining that under § 60541(g)(1)(A) the Attorney General "may" release eligible elderly offenders, and district court was without jurisdiction to grant relief); *see also United States v. Lovelace*, No. 12-402, 2014 WL 4446176, at *2 (N.D. Ga. Sept. [9,] 2014) ("[T]he Court has no authority to grant Defendant's request and order the Bureau of Prisons to release Defendant to a halfway house." (citing 18 U.S.C. §§ 3621(b) & (b)(5))).

*United States v. Collins*, No. CR 616-014, 2020 WL 2529487, at *1 (S.D. Ga. May 18, 2020) (footnote omitted); *United States v. Smith*, No. 8:17-CR-412-T-36AAS, 2020 WL 2512883, at *3 (M.D. Fla. May 15, 2020) ("[U]nder the CARES Act, the determination of whether inmates qualify for home confinement rests with the BOP Director, and the Court lacks authority to direct the BOP to release the defendant to home confinement[.]" (citing *United States v. Robles*, CR 3:17-343, 2020 WL 2306847, at *5 (M.D. Pa. May 8, 2020))).

Indeed, the CARES Act "has nothing to say about the district court's authority to order home confinement during the covered emergency period." *Daniels*, 2020 WL 1938973, at *2. Instead, "under the CARES Act, the BOP, through the Attorney General's delegation, retains the 'exclusive authority and sole discretion to designate the place of an inmate's confinement,'

including home confinement." *Id.*; *see also de Jesus v. Woods*, No. 2:19-cv-121-WHA, 2019 WL 3326199, *4 (M.D. Ala. June 21, 2019) (BOP has the "exclusive authority and sole discretion" to place inmates in home confinement (quoting *Deffenbaugh v. Sullivan*, No. 5:19-HC-2049-FL, 2019 WL 1779573, *1 (E.D.N.C. Apr. 23, 2019))); *United States v. Campbell*, No. 3:12-CR-24 (CAR), 2014 WL 12911957, *1 (M.D. Ga. Sept. 17, 2014) ("Defendant's request to be placed on home confinement lies within the sole discretion of the BOP, and any order from this Court would merely be a recommendation to the BOP to consider placing Defendant in home confinement." (citing 18 U.S.C. § 3621(b))). Because the Court lacks authority to grant the requested relief under 18 U.S.C. § 3624(c)(2) and § 12003(b)(2) of the CARES Act, this request is denied.

**B.     Sentence reduction based on activity in Defendant's state court case**

In the Initial Motion, Defendant appears to argue that the Court should order the BOP to grant him jail credits from the date of his arrest in the State of Florida until the present, or alternatively, "inform[] the BOP of the relevant conduct sentences to be deemed concurrent" with his state of Florida criminal case. ECF No. [32] at 1. *See also* ECF No. [41] (requesting that, as an alternative to compassionate release, the Court grant "the jail credits or confirms that the state and federal case stem from the same actions . . . that led to the investigation and arrest for all state and federal charges"). The Government responds that Defendant is not entitled to a sentence reduction based on his state criminal case. ECF No. [39] at 10-11. The Court agrees.

Section 3585(b) of Title 18, United States Code, provides that a defendant shall be given credit toward the service of a term of imprisonment for any time spent in custody pre-sentencing "that has not been credited against another sentence." 18 U.S.C. § 3585(b). According to the BOP, Defendant's state jail time has already been credited to his state sentence, and thus crediting state time to his federal sentence is "prohibit[ed]" and "cannot be applied" under § 3585(b). ECF No.

[32] at 9. In any event, "court[s] may not modify a term of imprisonment once it has been imposed" unless otherwise expressly permitted by statute or Rule 35, Fed. R. Crim. P., *see* 18 U.S.C. § 3582(c), yet Defendant fails to identify any statute that permits the Court to reduce his sentence based on time spent in state custody. Further, to the extent that Defendant argues that his federal sentence is to run concurrent with his state sentence, he fails to present any evidence in support. And, in this regard, the Court notes that "concurrent" time is not part of Defendant's sentence. *See* ECF Nos. [30]; [31]. Regardless, the Court agrees with the Government that this request is of "no practical effect," ECF No. [39] at 11, because Defendant's state court sentence is already running concurrently with his federal sentence, *see* ECF No. [32] at 5.

Accordingly, Defendant's request for his federal sentence to be credited with time spent in state custody and his request for his sentence to run concurrently with his state sentence are denied.

### C. Compassionate release

Defendant next seeks relief under the compassionate release provision of 18 U.S.C. § 3582(c)(1)(A), which provides:

> (c) Modification of an imposed term of imprisonment.— The court may not modify a term of imprisonment once it has been imposed except that—
>
> (1) in any case—
>
> (A) the court, upon motion of the Director of the Bureau of Prisons, or upon motion of the defendant after the defendant has fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier, may reduce the term of imprisonment (and may impose a term of probation or supervised release with or without conditions that does not exceed the unserved portion of the original term of imprisonment), after considering the factors set forth in section 3553(a) [18 U.S.C. § 3553(a)] to the extent that they are applicable, if it finds that—
>
> (i) extraordinary and compelling reasons warrant such a reduction . . . .
>
> . . . .

and that such a reduction is consistent with applicable policy statements issued by the Sentencing Commission . . . .

18 U.S.C. § 3582(c)(1)(A)(i).

Under the relevant Sentencing Guidelines policy statement, the Court "may reduce a term of imprisonment . . . if, after considering the factors set forth in 18 U.S.C. § 3553(a), to the extent they are applicable, the court determines that . . . extraordinary and compelling reasons warrant a reduction." U.S. Sentencing Guidelines Manual § 1B1.13 (U.S. Sentencing Comm'n 2018). The Sentencing Guidelines add that the Court should reduce a sentence only if the "defendant is not a danger to the safety of any other person or to the community." *Id.*

Accordingly,

> Section 3582 sets out the order in which this Court should analyze a criminal defendant's entitlement to a sentencing reduction. *First*, when the defendant brings the motion himself, the Court must ascertain whether he "has fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf or [whether there has been a] lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier." 18 U.S.C. § 3582(c)(1)(a). *Second*, the Court should "consider[] the factors set forth in section 3553(a) to the extent that they are applicable." *Id. Third*, the Court should turn to the "extraordinary and compelling reasons" test, as outlined in U.S.S.G. § 1B1.13 cmt. n.1. And *fourth*, the Court should determine whether the defendant poses a "danger to the safety of any other person or to the community, as provided in 18 U.S.C. § 3142(g)." *Id.*

*United States v. Stuyvesant*, No. 09-60184-CR, 2020 WL 1865771, at *2 (S.D. Fla. Apr. 14, 2020). Thus, in order to grant Defendant's request pursuant to § 3582(c)(1)(A), the Court must: (1) find that Defendant has exhausted his administrative remedies with the BOP; (2) weigh the relevant § 3553(a) factors; (3) conclude that extraordinary and compelling reasons warrant compassionate release in this case; and (4) determine that Defendant is not a danger to the community. Moreover, Defendant bears the burden of establishing that compassionate release is warranted. *See United*

*States v. Hamilton*, 715 F.3d 328, 337 (11th Cir. 2013) (explaining that "a defendant, as the § 3582(c)(2) movant, bears the burden of establishing that" compassionate release is warranted, but that, even where a defendant satisfies this burden, "the district court still retains discretion to determine whether a sentence reduction is warranted").

Defendant asserts that compassionate release is appropriate in light of the pandemic and his underlying medical conditions, which include worsening vision. ECF Nos. [34]; [35]. The Government opposes, arguing that (i) the BOP has modified its operating procedures to effectively respond to the COVID-19 pandemic; (ii) Defendant has not shown that his proposed release plan is safer than his current place of incarceration; (iii) Defendant poses a danger to the community; (iv) the § 3553(a) factors do not weigh in Defendant's favor; and (v) Defendant fails to present "extraordinary and compelling reasons" to support his release. ECF No. [39]. Upon review and consideration, the Court concludes that Defendant does not present circumstances warranting a sentence reduction and early release.

Defendant has satisfied the first inquiry in the section 3582 analysis, administrative exhaustion. However, as explained below, he fails to demonstrate that the applicable § 3553(a) factors weigh in favor of a sentence modification, that extraordinary and compelling circumstances exist, or that he is not a danger to the community.

The applicable § 3553(a) factors include, among others: "(1) the nature and circumstances of the offense and the history and characteristics of the defendant," as well as "(2) the need for the sentence imposed — (A) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense; (B) to afford adequate deterrence to criminal conduct; [and] (C) to protect the public from further crimes of the defendant." 18 U.S.C. § 3553(a). At the time of sentencing, the Court concluded that a term of imprisonment of 30 months was

appropriate in this case in light of these § 3553(a) considerations. To date, Defendant has served nearly two-thirds of his sentence. Aside from Defendant's alleged medical conditions, which are not supported by medical documentation,[2] Defendant has not shown further bases to persuade the Court that the sentence imposed should be modified based upon the factors set forth in § 3553(a). *See United States v. Post*, No. 15-cr-80055, 2020 WL 2062185, at *2 (S.D. Fla. Apr. 29, 2020) (noting "that much of the information that [the defendant] provide[d] in his Motion was before the Court at the time of his sentencing," and the Court imposed an appropriate sentence considering this information); *United States v. Zamor*, No. 17-20353-CR, 2020 WL 2062346, at *2 (S.D. Fla. Apr. 29, 2020) ("Crucially, [the defendant] has completed less than 40% of this sentence, and the applicable 18 U.S.C. § 3553(a) factors . . . do not warrant [his] release after serving less than half of his sentence."); *United States v. Rodriguez-Orejuela*, No. 03-cr-20774, 2020 WL 2050434, at *7 (S.D. Fla. Apr. 28, 2020) (noting that, in weighing the sentencing factors, "the Court's analysis is virtually unchanged from thirteen years ago."). Moreover, the Court notes that Defendant has been assigned to FCI Butner Medium II, which facility provides enhanced medical services for inmates, including those with complex and chronic conditions that require frequent clinical contacts and inpatient care.[3]

---

[2] Defendant's Emergency Motion represents that Defendant has "VKH," high blood pressure, obesity, and a history of asthma. ECF No. [33] at 2. The Government represents that a review of the "most current BOP medical records reveals that the Defendant currently suffers from hypertension, and he has had Vogt-Koyanagi-Harada disease ("V[K]H") since 2012-2014" and that VKH has been worsening since 2014 and is impairing Defendant's vision to a "very significant degree." ECF No. [39] at 4, 13. VKH is an "autoimmune condition in which the immune system attacks melanin in the eyes, causing inflammation and potentially blindness." *United States v. Mounthachack*, No. 13-CR-0141 (PJS/SER), 2016 WL 3647848, at *2 (D. Minn. July 1, 2016). It is not curable, but "can be monitored and treated (typically with steroids to suppress the autoimmune reaction)" with "commonly available drugs." *Id.*

[3] *Care Level Classification for Medical and Mental Health Conditions or Disabilities*, Federal Bureau of Prisons Clinical Guidance May 2019,

Additionally, with regard to the "extraordinary and compelling reasons" test, CDC guidance indicates that individuals with the following health conditions are at a higher risk of contracting severe illness due to COVID-19: cancer, chronic kidney disease, COPD, serious heart conditions such as heart failure, coronary artery disease or cardiomyopathies, obesity, Type 2 diabetes, sickle cell disease, smoking, pregnancy, and people in an immunocompromised state.[4] Further, CDC guidance indicates that individuals with the following health conditions might be at an increased risk of contracting severe illness due to COVID-19: moderate to severe asthma, cerebrovascular disease, cystic fibrosis, high blood pressure, neurologic conditions, liver disease, overweight, pulmonary fibrosis, thalassemia, Type 1 diabetes, and individuals with an immunocompromised state.

As noted, Defendant fails to provide medical records supporting his claims. Nonetheless, the Government represents that Defendant's medical records reflect that Defendant suffers from VKH and hypertension. ECF No. [39] at 4, 13.[5] As an initial matter, blindness or vision loss is not a risk factor listed under CDC guidance. *See United States v. Cooper*, No. 115CR00223LMMLTW1, 2020 WL 6145109, at *2 (N.D. Ga. Sept. 11, 2020) (denying motion for compassionate release and finding that defendant, who claimed to be blind in one eye and

---

https://www.bop.gov/resources/pdfs/care_level_classification_guide.pdf; *Federal Correctional Institution Butner Medium 2*, https://www.prisonerresource.com/federal-prisons/fci-butner-medium-2/ (last visited December 9, 2020).

[4] *People of Any Age with Underlying Medical Conditions*, Centers for Disease Control and Prevention, https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/people-with-medical-conditions.html (last updated December 1, 2020).

[5] The Presentence Investigation Report, ECF No. [24] ("PSI"), also reflects that Defendant was diagnosed with VKH in 2012, that he is "almost blind," and that he has been prescribed daily eye drops as treatment. *Id.* at ¶¶ 55, 57. Further, the PSI shows that Defendant has been treated for hypertension, and he has been prescribed medication. *Id.* at ¶ 57. The PSI makes no reference to asthma or obesity.

whose medical records reflected vision loss in the other eye requiring surgery, "has not established an extraordinary and compelling reason to warrant release" because the CDC "has not found that people with glaucoma or eye vision loss are at an increased risk of severe illness from COVID-19"). *See also United States v. Bragdton*, No. 18-CR-60349, 2020 WL 7129587, at *4 (S.D. Fla. Dec. 4, 2020) (denying motion for compassionate release where defendant claimed to have "vision problems, including diabetic retinopathy and diabetic macular edema," and noting that defendant's "vision problems do not place him at higher risk due to COVID-19"). Hypertension is, however, included within CDC risk factors, but Defendant fails to allege the nature of this condition, its severity, any lasting effects, or what treatments he is or is not receiving for it.

Even accepting Defendant's representations regarding his other alleged medical conditions, which are also included within the CDC guidelines, Defendant is in his late twenties, he fails to allege that any of his medical conditions cannot be medically managed or that the procedures in place or resources available at FCI Butner Medium II are insufficient to protect him from the virus.[6] In fact, the BOP website indicates that there are presently three confirmed active cases at FCI Butner Medium II, involving one inmate and two staff members.[7] Additionally, while Defendant states generally that his vision problems substantially diminish his ability to provide

---

[6] Defendant repeatedly alleges that the delay in receiving eye surgery evidences the BOP's deliberate indifference to his medical needs. *See* ECF Nos. [33] at 2; [34] at 1; [41] at 18. However, as the Government notes based on Defendant's medical records, Defendant's potential eye surgery was scheduled at an outside clinic, Duke Eye Center, but his appointment has been delayed due to COVID-19 complications, and that in the interim Defendant is being treated by the BOP. ECF No. [39]. In fact, Defendant's correspondence with the BOP reflects that the Duke Eye Center has "placed a hold on all of [BOP's] eye appointments, surgeries, and follow up care," the "Clinical Director is working on this and trying to rectify the situation to get [Defendant] all seen," Defendant is being seen by his health care provider, and his appointment with ophthalmology is "pending." ECF No. [41] at 6-13, 20.

[7] *COVID-19 Cases*, Federal Bureau of Prisons, https://www.bop.gov/coronavirus/ (last visited December 10, 2020).

self-care within the correctional facility, he also represents that he has an "orderly with him at all times for him to properly function." ECF No. [35] at 2. *See also* ECF No. [32] at 2 (alleging that he receives assistance using emails, phones, showers, eating, and getting meals).

The Court is sympathetic to Defendant's health conditions and his concerns regarding COVID-19 outbreaks in prison facilities. However, "the BOP Director has not found COVID-19 alone to be a basis for compassionate release." *United States v. Harris*, No. 2:12-cr-140-FtM-29DNF, 2020 WL 1969951, at *2 (M.D. Fla. Apr. 24, 2020) (citing *United States v. Eberhart*, No. 13-cr-313-PJH-1, 2020 WL 1450745, at *2 (N.D. Cal. Mar. 25, 2020) ("General concerns about possible exposure to COVID-19 do not meet the criteria for extraordinary and compelling reasons for a reduction in sentence set forth in the Sentencing Commission's policy statement on compassionate release, U.S.S.G. § 1B1.13.")); *see also United States v. Kelly*, No. 2:03-cr-126-FtM-29, 2020 WL 2039726, at *1 (M.D. Fla. Apr. 28, 2020) (The "defendant does not allege any extraordinary or compelling circumstances to support compassionate release."). Thus, Defendant has not met his burden to establish that extraordinary and compelling reasons exist to support his request for compassionate release or sentence modification.

Finally, the Court must evaluate whether Defendant is a danger to the safety of others or the community under 18 U.S.C. § 3142(g). In making this determination, courts should consider "(1) the nature and circumstances of the offense charged . . .; (2) the weight of the evidence against the person; (3) the history and characteristics of the person . . . ; and (4) the nature and seriousness of the danger to any person or the community that would be posed by the person's release." 18 U.S.C § 3142(g). Defendant pled guilty to possession of fifteen or more unauthorized access devices and aggravated identity theft. ECF No. [16]. The instant criminal conduct involved possession of a significant amount of personal identifying information (including names, dates of

birth, and social security numbers), consisting of credit and debit account numbers, driver's license numbers, Visa gift cards, receipts for money orders, check books, and mail in other people's names. ECF No. [17]. Further, Defendant's criminal history is extensive and disturbing, including arrests for burglary, strong armed robbery, aggravated battery, grand theft, resisting an officer with violence, battery on a pregnant woman, and felony battery involving strangulation. ECF No. [24]. As noted by the Court during sentencing, Defendant's VKH "certainly has not deterred [Defendant's] criminal conduct" and that he has a "significant criminal history that would tell this Court that [his] actions are a danger to this community." Additionally, the Warden determined that Defendant did not meet the criteria for release to home confinement because he has a history of violence and has a high pattern risk score for recidivism. ECF No. [32] at 13. Viewing all of the section 3412(g) factors, the Court finds that Defendant's release would pose a danger to the community. Defendant, therefore, has not carried his burden to support a compassionate release.

### D.    Appointment of counsel

Defendant requests that the Court appoint counsel to "bolster his argument[s]," ECF No. [35] at 4, and to assist with obtaining records and making filings, ECF No. [32] at 2. Upon review, Plaintiff is not entitled to the relief he requests. There is no statutory or constitutional right to counsel for a § 3582(c) proceeding. *United States v. Webb*, 565 F.3d 789, 794 (11th Cir. 2009). Instead, the decision to appoint an attorney is "left to the discretion of the district court." *Id.* at 795. In this regard, a court may appoint counsel "in the interests of justice." *United States v. Delco*, No. CR 09-57, 2020 WL 4569670, at *2 (E.D. La. Aug. 7, 2020). Here, the "interests of justice" do not require that counsel be appointed because Defendant has not shown that he is incapable of adequately presenting his motion *pro se*. Indeed, over the course of his briefings, he sets forth the facts, claims, and arguments to prosecute his motions for compassionate release. Further, to the

extent Defendant requests counsel to assist with obtaining records and making filings, the "Court fails to see how an attorney is necessary to compile or obtain documentation." *United States v. Elliott*, No. CR413-115, 2020 WL 5171363, at *4 (S.D. Ga. Aug. 31, 2020) (denying motions for compassionate release, home confinement, and appointment of counsel). In any event, courts within this district routinely deny as moot motions for appointment of counsel where the underlying motions for compassionate release are denied on the merits, like here. *See, e.g.*, *United States v. Smith*, No. 9:14-CR-80219, 2020 WL 5235726, at *2 (S.D. Fla. Sept. 2, 2020); *United States v. Neloms*, No. 18-CR-80154, 2020 WL 4794008, at *4 (S.D. Fla. Aug. 18, 2020). Therefore, the Court denies Defendant's request for appointment of counsel.

### III.  CONCLUSION

Accordingly, it is **ORDERED AND ADJUDGED** that the Motions, **ECF Nos. [32]** and **[33]**, are **DENIED**.

**DONE AND ORDERED** in Chambers at Miami, Florida, on December 11, 2020.

_____
**BETH BLOOM
UNITED STATES DISTRICT JUDGE**

Copies furnished to:

Counsel of record

Domineke Miller
19568-104
Butner Medium II
Federal Correctional Institution
Inmate Mail/Parcels
Post Office Box 1500

Butner, NC 27509